1
2
3                           UNITED STATES DISTRICT COURT
4                          NORTHERN DISTRICT OF CALIFORNIA
5

6   ANDREW MATTIODA,                        Case No.  20-cv-03662-SVK
7                 Plaintiff,
                                            **ORDER ON MOTION TO DISMISS**
8          v.                               **FIRST AMENDED COMPLAINT**
                                            Re: Dkt. No. 18
9   JIM BRIDENSTINE, et al.,
10                Defendants.

11          Plaintiff Andrew Mattioda alleges that he was subjected to disability-based discrimination,

12  harassment, reprisal, and other actions between May 2011 and March 2019, during his

13  employment as a scientist for Defendant National Aeronautics and Space Administration

14  ("NASA") at its Ames Research Center ("Ames").  Dkt. 16 ("First Amended Complaint" or

15  "FAC") ¶¶ 6, 10.  Before filing this lawsuit, Plaintiff filed four Equal Employment Opportunity

16  ("EEO") complaints with NASA.  Exs. A, C, D, and E to Dkt. 17-1 ("Scharf Decl.").

17          In this case, Plaintiff asserts multiple causes of action for violation of Section 501 of the

18  Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, *et seq.*, specifically: (1) disability

19  discrimination and harassment, (2) failure to engage in the interactive process, (3) reprisal, and

20  (4) failure to provide reasonable accommodation.  *See* FAC ¶¶ 141 *et seq*.  Defendant Jim

21  Bridenstine ("Bridenstine") is the NASA agency head.  *Id.* ¶ 2.  Now before the Court is

22  Defendants' motion to dismiss the FAC under Federal Rules of Civil Procedure 8(a), 12(b)(1), and

23  12(b)(6).  Dkt. 18.  All parties have consented to the jurisdiction of a magistrate judge.  Dkt. 9, 12;

24  *see also* Case No. 20-cv-3745 at Dkt. 14; Dkt. 20-cv-3849 at Dkt. 12; 20-cv-4457 at Dkt. 17.

25          Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for determination

26  without oral argument.  After considering the parties' submissions, the case file, and relevant law,

27  and for the reasons discussed below, Defendants' motion to dismiss the FAC is **GRANTED IN**

28  **PART and DENIED IN PART.**

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.      BACKGROUND

This discussion of the background facts is based on the allegations of the FAC.  Since August 2007, Plaintiff has been employed as a Space and Planetary Scientist with the Astrochemistry Laboratory at the NASA Ames Research Center.  FAC ¶ 6.  Plaintiff alleges that he has been diagnosed with disorders of his hips and spine and that he has experienced life-long ear infections.  *Id.* ¶ 7.

### A.      Plaintiff's EEO Complaints

On August 21, 2015, Plaintiff contacted NASA's Office of Diversity and Equal Opportunity ("EEO") concerning his claims of discrimination and harassment based on disability, as well as reprisal for protected activity.  *Id.* ¶ 52; *see also* Scharf Decl. ¶ 3 and Exs. A, B.  The EEO's Notice of Acceptance of Claim delineated this first EEO complaint as follows:

> Based on your disabilities (physical) and in retaliation for prior protected activity, you were discriminated against and subjected to harassment when:
>
> a.   your requests for accommodation were denied in 2011 and continually thereafter;
>
> b.   on July 23, 2015, your supervisor rejected your request to reconsider the "Meets Expectations" rating you received for your performance of Critical Element #2 in your 2014 - 2015 performance evaluation; and
>
> c.  you have been subjected to on-going harassment, isolation and professional humiliation and adverse rumors and innuendo on the part of your supervisors.

*Id.* ¶ 7 and Ex. F.  Plaintiff received a right to file a formal administrative complaint of employment discrimination on November 6, 2015, and he did so on November 16, 2015.  FAC ¶ 57; Scharf Decl. ¶ 3 and Ex. A.

Plaintiff filed a second formal EEO complaint on August 22, 2016.  Scharf Decl. ¶ 4 and Ex. C.  The EEO's Notice of Acceptance of Claim delineated this second EEO complaint as follows:

1. Because of your race (Native American), disabilities (physical) and in retaliation for prior EEO activity, you were discriminated against when, on April 27, 2016, you was required to provide justification before you were permitted to access your own grant funds when similarly situated employees were treated more fairly.

2. Because of your disabilities (physical) and in retaliation for prior EEO activity, you were subjected to harassment (hostile work environment) which includes but is not limited to the following:

    a. On May 12, 2016, your supervisor added a caveat to your premium travel accommodation request and your funding was monitored; and

    b. On May 25, 2016, you were temporarily transferred from the Space Science and Astrobiology Division to the Planetary Systems Branch.

*Id*. ¶ 8 and Ex. G.

Plaintiff filed a third formal EEO complaint on March 18, 2017.  *Id*. ¶ 5 and Ex. D.  The EEO's Notice of Acceptance of Claim delineated this third EEO complaint as follows:

1. Because of your disabilities (physical) and in retaliation for prior EEO activity (filed formal complaints), from February 11, 2011 through February 15, 2017, you were subjected to on-going acts of harassment (hostile work environment), including but not limited to threats to terminate you and ostracism resulting from your request for reasonable accommodation.

2. Because of your disabilities (physical) and in retaliation for prior EEO activity (filed formal complaints) you were discriminated against when on February 17, 2017, you were required to include your reasonable accommodation travel funds in your work package to NASA Headquarters.

*Id*. ¶ 9 and Ex. H.

Plaintiff filed a fourth formal EEO complaint on October 2, 2017.  *Id*. ¶ 6 and Ex. E.  The EEO's Notice of Acceptance of Claim delineated this fourth EEO complaint as follows:

Because of your disability (physical) and retaliation for participating in prior protected EEO activity (filed three formal complaints of discrimination), you allege you were discriminated against when, on August 8, 2017, you were not selected for the position of Senior Scientist, Laboratory Astrophysics in the Science Directorate, Senior Technical (ST) 1330-00, advertised under Vacancy Announcement No. AR17N0002.

*Id.* ¶ 10 and Ex. I.

According to Defendant, Plaintiff requested hearings on all four EEO complaints, but after discovery was completed and the agency filed a motion for summary judgment, Plaintiff withdrew his request for hearing before the EEOC.  Dkt. 18 at 5.

United States District Court
Northern District of California

**B.      District court litigation**

Plaintiff filed four complaints in this District, on June 2, 2020; June 5, 2020; June 23, 2020; and July 6, 2020.  *See generally* Dkt. 10.  On September 3, 2020, the Court consolidated the cases.  Dkt. 15.  As directed by the Court, Plaintiff filed a consolidated complaint on September 14, 2020.  *See* FAC.  In the FAC, Plaintiff alleges that beginning in March 2011, he experienced harassment, discrimination, failure to engage in the iterative process/provide a reasonable accommodation, and reprisal.  *See id.* ¶¶ 10-140.  Defendant, the NASA agency head, is the proper defendant in this Rehabilitation Act case against NASA.  *See SAI v. Smith*, No. 16-cv-01024-JST, 2018 WL 534305, at *7 (N.D. Cal. Jan. 24, 2018).

Now before the Court is Defendant's motion to dismiss the FAC.  Dkt. 18.[1]  Plaintiff opposes.  Dkt. 21.

## II.      LEGAL STANDARDS

**A.      Rule 8(a)(2)**

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Courts have power to dismiss a complaint for egregious violations of Rule 8(a)'s "short and plain" requirement.  *See Cafasso v. U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) and cases cited therein.

**B.      Rule 12(b)(1)**

Defendants argue that the FAC should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) to the extent contains allegations outside the scope of Plaintiff's EEO charges and investigation.  Dkt. 18 at 11-15.  If a court's subject matter jurisdiction is challenged, the party asserting that a federal court has subject matter jurisdiction bears the burden of establishing it.  *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994).

---

[1] Defendant filed a motion to dismiss the FAC on September 25, 2020.  Dkt. 17.  On the same date, Defendant filed a corrected motion to dismiss.  Dkt. 18.  The Court treats Dkt. 18 as the operative motion and will terminate the original motion (Dkt. 17).

United States District Court
Northern District of California

### C.      Rule 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, the court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all inferences in the plaintiff's favor.  *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Leave to amend must be granted unless it is clear that the complaint's defects cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## III.      DISCUSSION

### A.      Materials That Can Be Considered

As a preliminary matter, the Court must rule on the admissibility of the extra-record materials that both parties have submitted in connection with the motion to dismiss.  When adjudicating a factual challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may consider evidence outside the pleadings, including affidavits submitted by the parties. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the Court's consideration of extra-pleading materials is more limited.  Normally, the Court cannot consider matters outside of the pleadings without converting the motion into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6); 12(d); *see also Ramirez v. United Airlines, Inc.*, 416 F.

United States District Court
Northern District of California

Supp. 2d 792, 795 (N.D. Cal. 2005).  However, the Ninth Circuit has held courts may consider materials submitted with and attached to the complaint.  *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  A court may also consider unattached evidence on which the complaint "necessarily relies" if:  "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *Id.*  The Court may also "take judicial notice of documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute."  *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (citation omitted).  In addition, courts may take judicial notice of matters of public record, including "records and reports of administrative bodies." *Anderson v. Holder,* 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  "In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record." *Lacayo v. Donahue,* No. 14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 3, 2015) (citations omitted).

Both parties have submitted extrinsic evidence concerning Plaintiff's EEO proceedings. All these materials are either referenced in the complaint or matters of public record and properly considered in either a 12(b)(1) or 12(b)(6) motion to dismiss. The Court overrules Plaintiff's objection that because Defendant's Rule 12(b)(1) motion is "irrelevant," the evidence offered to attack the FAC is "neither relevant nor appropriate."  *See* Dkt. 21 at 3.  As for the 12(b)6 motion, the FAC necessarily relies on the administrative records, they are matters of public record, and Plaintiff has not offered any reason to doubt the authenticity of the documents.  Indeed, Plaintiff himself has submitted extrinsic evidence of his EEO complaints in opposition to the motion to dismiss (*see* Dkt. 21-1 (exhibits to Juratovac Decl.)) and made arguments based on that evidence (*see* Dkt. 21 at 7-8), thereby effectively conceding that the Court may properly consider the record of Plaintiff's administrative complaints.

Accordingly, the Court will consider the documents referenced in the complaint and

1   judicially noticeable matters of public record with respect to the motion to dismiss.  However, in

2   doing so, the Court notices only the existence of the administrative proceedings and the agency's

3   findings and does not credit the truth of any fact recounted or matter asserted in the documents.

4   *See Lacayo v. Donahue,* 2015 WL 993448, at *10.

5   **B.      Failure to Exhaust Administrative Remedies**

6   **1.      Subject Matter Jurisdiction**

7   Plaintiff sues under the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.*), which

8   prohibits federal departments and agencies (among others) from discriminating against employees

9   solely based on disability.  29 U.S.C. § 791, 793, 794.  The remedies, procedures, and rights

10  available under Title VII of the Civil Rights Act of 1964, including sections 706(f)-(k) and 717

11  (42 U.S.C. §§2000e-5(f)-(k) and 2000e-16), are available to federal employees in actions against a

12  federal agency employer under section 501 of the Rehabilitation Act.  29 U.S.C. § 794a(a)(1).

13  "To preserve her right to maintain a suit alleging employment discrimination against an

14  agency of the United States, a claimant must exhaust her administrative remedies by filing a claim

15  of discrimination with the allegedly offending agency in accordance with published procedures."

16  *Leorna v. U.S. Dept. of State*, 105 F.3d 548, 550 (9th Cir. 1997) (citing *Brown v. Genl. Servs.*

17  *Admin.*, 425 U.S. 820 832 (1976)); *see also Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003).

18  To bring a claim under the Rehabilitation Act, a federal employee must first contact an EEO

19  counselor within forty-five days of the alleged discrimination.  29 C.F.R. § 1614.105(a)(1).  The

20  agency then investigates, and the claimant may later file a formal EEO complaint.  29 C.F.R.

21  § 1614.105(c), (d).  If the latter is not resolved after the agency issues its final decision, the

22  claimant may either file directly in federal court within 90 days (*see* 29 C.F.R. § 1614.407(a)) or

23  appeal through the EEOC within 30 days (*see* 29 C.F.R. § 1614.401(a), 1614.402(a)).  If at any

24  time, the employee's complaint sits idle within the administrative process for more than 180 days,

25  the employee has an immediate right to file a civil action in federal court but must do so within 90

26  days.  *See* 29 C.F.R. § 1614.407(b)(d).  These time limits "are subject to waiver, estoppel and

27  equitable tolling."  29 C.F.R. § 1614.604(c).

28  Defendant argues that the exhaustion requirement is jurisdictional and that claims in the

United States District Court
Northern District of California

1    FAC that exceed the scope of the EEO proceedings should be dismissed for lack of subject matter

2    jurisdiction.  Dkt. 18 at 11-15.  Plaintiff responds that the exhaustion requirement is a claim

3    processing requirement and is not jurisdictional in nature.  Dkt. 21 at 1-3.  Defendant does not

4    address Plaintiff's argument in its reply.  *See* Dkt. 22.

5         The Ninth Circuit previously held that an employee's "substantial compliance" with the

6    administrative complaint process is a requirement for exhaustion that precludes district court

7    jurisdiction.  *See Sommatino v. United States,* 255 F.3d 704, 708 (9th Cir. 2001).  However, the

8    Supreme Court recently held that Title VII's requirement that a party file an EEOC charge before

9    suing in district court "is not of a jurisdictional cast" but is instead "a processing rule, albeit a

10   mandatory one."  *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1850-51 (2019).  Subsequently,

11   courts in this District have held that in light of *Fort Bend*, "the administrative complaint

12   requirement for Title VII claims by federal employees is not jurisdictional."  *Williams v. Wolf,* No.

13   19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019); *see also Pringle v.*

14   *Wheeler*, No. 19-cv-07432-WHO, 2020 WL 4673954, at *5 (N.D. Cal. Aug. 12, 2020); *Burnes v.*

15   *Chavez*, No. 19-CV-03420-LHK, 2020 WL 2306488, at *3 (N.D. Cal. May 8, 2020); *dela Cruz v.*

16   *Brennan*, No. 19-cv-01140-DMR, 2020 WL 1233886, at *4 (N.D. Cal. Mar. 13, 2020).

17        The Court finds the analysis of these cases persuasive and concludes that the requirement

18   of exhaustion of EEO administrative remedies is not jurisdictional.  Accordingly, Defendant's

19   motion to dismiss the FAC pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is

20   **DENIED**.  However, the charge-filing requirement remains a "mandatory processing rule," and a

21   plaintiff "must allege compliance with that requirement … in order to state a claim on which relief

22   may be granted."  *Williams*, 2019 WL 6311381, at *6 (quoting *Fort Bend*, 139 S. Ct. at 1851)

23   (internal quotation marks omitted).  The Court therefore proceeds to consider Defendant's

24   administrative exhaustion arguments together with Defendant's other arguments under Rule

25   12(b)(6).

26              **2.    Compliance with Pre-suit Filing Requirements**

27        Plaintiff alleges in the FAC that he exhausted his administrative remedies because on four

28   occasions, he filed EEO charges and permitted the agency to engage in more than 180 days of

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   investigation before bringing this matter to court.  FAC ¶¶ 61, 96, 111, 132.  However, as

2   discussed in Section III.A. above, in evaluating whether Plaintiff complied with the mandatory

3   processing rule before filing suit, the Court may look beyond the face of the FAC to public records

4   concerning Plaintiff's EEO complaints.

5          To show compliance with Title VII's claim presentment requirements, the allegations of a

6   plaintiff's judicial complaint must be "like or reasonably related to" the allegations made in the

7   EEO complaint, such that they would fall within "the scope of an [EEO] investigation which

8   [could] reasonably be expected to grow out of the [administrative] charge." *Sosa v. Hiraoka,* 920

9   F.2d 1451, 1456 (9th Cir. 1990) (citations, internal quotations marks, and emphasis omitted).  A

10  court evaluating the similarity between an administrative complaint and a complaint filed in

11  district court may consider "such factors as the alleged basis of the discrimination, dates of

12  discriminatory acts specified within the charge, perpetrators of discrimination named in the

13  charge, and any locations at which discrimination is alleged to have occurred." *Vasquez v. City of*

14  *Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004) (citation omitted). "In addition, the court should

15  consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent

16  that those claims are consistent with the plaintiff's original theory of the case." *Pringle,* 2020 WL

17  4673954, at *5 (citation omitted).  "Procedural technicalities" should not be employed to impede

18  the claimant from obtaining a judicial hearing on the merits. *Id.* (citation omitted).

19         Defendant argues that the following claims in the FAC are barred by Plaintiff's failure to

20  exhaust administrative remedies:  (1) claims based on incidents occurring after August 2017,

21  which is the last date mentioned in Plaintiff's EEO complaints; (2) claims against management

22  officials who were not identified in Plaintiff's EEO complaints; and (3) claims against Dr. Lee

23  (who was named in the EEO complaints) that are based on discrete incidents not mentioned in the

24  EEOC complaints.  Dkt. 18 at 13-15.

25                          **a.      Claims occurring after August 8, 2017**

26         Defendant argues that claims based on incidents occurring after August 8, 2017, which is

27  "the final date of allegations accepted by the agency," are barred because they exceed the scope of

28  the EEO investigations. Dkt. 18 at 15; *see also id.* at 10-11 (citing FAC ¶¶ 107-109 and 133-140).

1    In response, Plaintiff argues that he may properly assert claims that "can reasonably be expected to

2    grow from any charge of discrimination," including "facts and allegations occurring not only

3    before, but also after, the filing of the EEO complaint."  Dkt. 21 at 8.

4         In *Sosa*, which Plaintiff cites in support of this proposition, the Ninth Circuit held that a

5    claim could proceed based on its relationship to an earlier administrative charge even though

6    "[t]he EEOC could not have investigated the claim … because [the plaintiff] did not discover the

7    inequality until the same month the EEOC issued its reasonable cause determination."  920 F.2d at

8    1457.  However, another court in this District has noted that "Ninth Circuit authority appears to be

9    somewhat inconsistent on the question of claims based on similar conduct arising after an

10   investigation concluded."  *Williams*, 2019 WL 6311381, at *7.  The court in *Williams* contrasted

11   *Sosa* with *Vasquez*, in which the Ninth Circuit affirmed dismissal of a claim based on an incident

12   that occurred after the EEOC issued its right to sue letter, stating that "[t]he EEOC could not have

13   investigated that incident because it had not yet happened at the time the EEOC was conducting its

14   investigation."  *Id.* (citing *Vasquez*, 349 F.3d at 645).  The court in *Williams* conducted a careful

15   analysis of these authorities, in which it noted that *Vasquez* involved a litigation claim that was

16   dissimilar to the Plaintiff's administrative claim, and discussed Ninth Circuit authority articulating

17   practical reasons as to when a second filing would serve no purpose.  The *Williams* court

18   concluded that "Ninth Circuit precedent provides that even facts occurring after the administrative

19   agency has completed its investigation can fall within the scope of an earlier administrative

20   complaint so long as they are <u>sufficiently similar</u> to the claims raised therein."  *Williams*, 2019

21   WL 6311381, at *8 (emphasis added).

22        The court in *Pringle* applied this principle in holding that a plaintiff had exhausted

23   administrative remedies for claims concerning denial of leave in 2019 that occurred after the

24   administrative action he filed in 2016 ended.  2020 WL 4673954, at *6.  The court found that "the

25   2019 allegations are consistent with [plaintiff]'s original theory of the case because it involves the

26   same actors and similar conduct."  *Id.*  The court acknowledged that its decision "would allow

27   [plaintiff] to pursue claims for leave denials that occurred more than three years after his [] 2016

28   EEO Complaint" but noted that "the dates of discriminatory acts specified within the charge" are

United States District Court
Northern District of California

only one of the factors I must weigh here" and found that "[o]n balance," the facts that "[t]he perpetrators of discrimination named in the charge are the same and the claims are consistent with [the] original theory of the case ... shows that there is substantial similarity between his administrative complaint and his Title VII claims." *Id.*

Here, Defendant identifies paragraphs 107-109 and 133-140 of the FAC as being based on incidents that occurred after the last incident alleged in Plaintiff's EEO complaints. Dkt. 18 at 10-11. Applying the foregoing legal principles, the Court rules as follows regarding the paragraphs of the FAC challenged by Defendant:

| FAC Paragraph | Court's Ruling |
|---|---|
| 107. On December 11, 2017, MATTIODA e-mailed Dr. Hudgins an update on a project. Dr. Hudgins responded that he could not recommend, and did not recommend, the Astrophysics division fund any of MATTIODA's projects. Dr. Hudgins copied his e-mail to NASA's Astrophysics program, and the head of NASA's Planetary Science Program, as well as other leaders of NASA's Planetary Science program. This denial of participation in the project was another effort to harass MATTIODA because of his disability, and to support the actions of Dr. Dotson and Dr. Lee against MATTIODA. | The Court **GRANTS** the motion to dismiss claims based on the incident alleged in this paragraph for failure to exhaust administrative remedies. The conduct alleged is not sufficiently similar to the allegations made in the EEO complaints. Dr. Hudgins' funding role in the Astrophysics division does not appear in the EEO record, and he is mentioned only in connection with different discussions in the 2013-14 time frame. |
| 108. On December 13, 2017, MATTIODA was notified that his Emerging Worlds proposal had been rejected for funding by the Planetary Science division. After the rejection, MATTIODA's, coinvestigator on the proposal, Dr. Uma Gorti, asked him, "Is anyone at NASA Headquarters mad at you?" Dr. Gorti explained that her extensive experience with NASA proposal review panels, taught her that the decision not to fund MATTIODA's proposal was "purely political" and not based on merit. Dr. Gorti also said other Emerging Worlds proposals with identical scores as MATTIODA's were funded in the same call. AMES' action to reject this project was yet another form of reprisal. | The Court **GRANTS** the motion to dismiss claims based on the incident alleged in this paragraph for failure to exhaust administrative remedies. The conduct alleged is not sufficiently similar to the allegations made in the EEO complaints. The Emerging Worlds proposal does not appear in the EEO record, and Dr. Gorti is mentioned only in connection with a different discussion in the 2013 time frame. |

11

United States District Court
Northern District of California

| | |
|---|---|
| 109. On December 20, 2017, MATTIODA e-mailed Dr. Jeff Grossman, Discipline Scientist for Emerging Worlds program, regarding MATTIODA's rejection and the unfair rating his Emerging Worlds proposal had received. Eventually, Dr. Grossman agreed to provide preliminary funding for two of the three years requested. MATTIODA believes Dr. Grossman's partial response was an additional attempt to support the retaliatory efforts by Dr. Lee and Dr. Dotson against MATTIODA. | The Court **GRANTS** the motion to dismiss claims based on the incident alleged in this paragraph for failure to exhaust administrative remedies.  The conduct alleged is not sufficiently similar to the allegations made in the EEO complaints.  Neither Dr. Grossman nor the Emerging Worlds proposal appears in the EEO record. |
| 133. On December 13, 2017, Dr. Bicay told MATTIODA that Dr. Bicay wanted the ST position (Dr. Sandford) to assist in negotiating new hires for the group and obtaining direct funding from NASA Headquarters. MATTIODA and Dr. Farid Salama had vast experience with these two functions. In contrast, for some 10 years, Dr. Sandford had not had a relationship with, nor had he even worked with, the Astrophysics Program at NASA Headquarters. This admission was yet other evidence that NASA's rationale for not selecting MATTIODA for the ST position was unworthy of credence because it was internally inconsistent. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  The conduct alleged is sufficiently similar to the allegations made in the EEO complaints, which discuss Plaintiff's application for this specific ST position, allege similar conduct, and identify the same actor (Dr. Bicay). |
| 134. On April 18, 2018, an announcement was posted for a vacant position in the Astrophysics and Astrochemistry Laboratory group. MATTIODA volunteered to serve on the selection/rating panel. On April 30, 2018, during a meeting with Dr. Jeff Hollingsworth, MATTIODA told Dr. Hollingsworth that he felt like Dr. Howell had blacklisted MATTIODA due to his disabilities and prior protected activities. MATTIODA also told Dr. Hollingsworth that he had volunteered to be on the selection committee for the new Laboratory Astrophysics position, but had not been selected for that committee. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Although the EEO complaints do not complain about Dr. Hollingsworth, Plaintiff's non-selection for this selection committee is sufficiently similar to the allegations made in the EEO complaints, which involve the same actor (Dr. Howell) and similar conduct, such as passing over Plaintiff and not selecting Plaintiff's candidates. |
| 135. On or about June 29, 2018, MATTIODA learned NASA had hired a new Astrophysics and Astrochemistry Laboratory hire. MATTIODA was not consulted regarding the new hire, even though he was the only | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  The alleged conduct is sufficiently similar to the allegations made in the EEO complaints, which involve similar conduct, |

| | |
|---|---|
| potential "unbiased" Astrophysics evaluator when the other two evaluators both had their own research candidates applying for the job. Again, NASA retaliated against MATTIODA by excluding him from an assignment wherein he was the only obvious, nonbiased selecting official. | such as passing over Plaintiff and not selecting Plaintiff's candidates. |
| 136. During 2018 MATTIODA worked months on the team's 2018 version of the Lab Astro WP. MATTIODA was a senior member of that package. On July 3, 2018, Dr. Howell announced Dr. Ella Sciamma O'Brien ("Dr. Sciamma O'Brien") would be the point of contact for the work package. NASA's selection was in direct contradiction to Dr. Bicay's prior statement that MATTIODA was to participate in the "leadership and vision" for the future of the Astrophysics program. The selection was yet another form of ongoing retaliation. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Plaintiff's non-selection as the point of contact for this work package is sufficiently similar to the allegations made in the EEO complaints, which involve the same actor (Dr. Howell) and similar conduct, such as passing over Plaintiff and not selecting Plaintiff's candidates. |
| 137. On August 1, 2018, Dr. Howell led a SS Division panel meeting to review potential NPP postdoctoral candidates. For MATTIODA's proposed NPP candidate, Dr. Howell asked him aggressive and interrogation-like questions regarding that candidate. Dr. Howell did not ask these same aggressive and interrogation-like questions of the other scientists with proposed candidates. But for MATTIODA's disability and prior EEO complaints, Dr. Howell would not have treated MATTIODA in this manner. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  The conduct alleged is sufficiently similar to the allegations made in the EEO complaints, which involve the same actor (Dr. Howell) and similar conduct, such as passing over Plaintiff and not selecting Plaintiff's candidates. |
| 138. On August 17, 2018, MATTIODA was informed his NPP postdoctoral applicant was not selected in this round of applications. The reasons listed for not selecting MATTIODA's candidate mirrored Dr. Howell's comments given during his aggressive questioning of MATTIODA. Dr. Howell controlled whether MATTIODA's NPP candidate was selected, and this non-selection was yet another form of reprisal/retaliation. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Plaintiff's non-selection as the point of contact for this work package is sufficiently similar to the allegations made in the EEO complaints, which involve the same actor (Dr. Howell) and similar conduct, such as passing over Plaintiff and not selecting Plaintiff's candidates. |
| 139. On October 26, 2018, when MATTIODA was moving an item in the lab, Dr. Salama | The Court **GRANTS** the motion to dismiss claims based on the incident alleged in this |

| | |
|---|---|
| yelled out to him, "Watch it. Don't hurt your back, I know you have back issues." MATTIODA had never told Dr. Salama about his back disability issues, so Defendant must have disclosed confidential information about his hips, back, and accommodations without MATTIODA's permission. | paragraph for failure to exhaust administrative remedies. The conduct alleged is not sufficiently similar to the allegations made in the EEO complaints. The EEO complaints do not allege misconduct by Dr. Salama but mention Dr. Salama only in the context of an example of differential treatment by Plaintiff by superiors. The EEO complaints do not allege conduct similar to what is alluded to in this paragraph. |
| 140. On March 19, 2019, Ms. Kim Dufour, representative for USJobs website, told MATTIODA that when the ST Position was being evaluated in late 2017, NASA had never requested disability status information from that USJOBS system. Despite the 2017 vacancy announcement having stated the position was open to candidates with disabilities, NASA never requested the disability status for any candidates. NASA apparently never intended to promote anyone with a disability, or in accord with Schedule-A preference, or in accord with the prior recommendations for "diversity." | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph. The conduct alleged is sufficiently similar to the allegations made in the EEO complaints, which discuss Plaintiff's application for this specific ST position. |

### b.    Claims against management officials not named in EEO complaints

Defendant argues that Plaintiff's claims against certain management officials are barred because Plaintiff's EEO charges did not include any allegations against those individuals. Dkt. 18 at 13-14; *see also id.* at 9-10 (citing ¶¶ 20, 51, 53, 74, 81, 82, 87, 94, 99, 106, 116).

As a general rule, Title VII plaintiffs may sue only those named in the EEOC charge, because only those parties had an opportunity to respond to the charges during the EEOC's investigation. *Sosa*, 920 F.2d at 1458. Based on an employee's charge against one supervisor, "the EEOC would have no reason to investigate" employees who had responsibilities outside the named employee's authority. *Vasquez*, 349 F.3d at 645. However, courts have developed a number of exceptions to this rule in Title VII cases and allowed suit against unnamed defendants where, for example:  (1) the unnamed persons "were involved in the acts giving rise to the EEOC

claims"; (2) "where the EEOC or defendants themselves should have anticipated that the claimant would name those defendants in a Title VII suit"; (3) the respondent named in the EEOC charge is a principal or agent of the unnamed party or if they are substantially identical parties; (4) if the EEOC could have inferred that the unnamed party violated Title VII; or (5) if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings.  *Sosa*, 920 F.2d at 1458-59 (internal quotation marks and citations omitted).

Applying the foregoing legal principles, the Court rules as follows regarding the paragraphs of the FAC that Defendant argues are barred because Plaintiff's EEO charges did not include any allegations against the individuals identified in those paragraphs (*see* Dkt. 18 at 9-10):

| FAC Paragraph | Court's Ruling |
|---|---|
| 20. In mid August 2011, MATTIODA had a telephone call with Ombudsman, Dr. James Arnold ("Dr. Arnold"). On or about August 17, 2011, MATTIODA then went to see an AMES Ombudsman, Jack Boyd. MATTIODA reviewed the series of events involving Dr. Lee. MATTIODA asked Mr. Boyd, "Is this an EEO Matter?" to which Mr. Boyd responded, "Just let it slide" or words to that affect. Mr. Boyd recommended MATTIODA not take any action to what he reported as harassment. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  An investigation of Plaintiff's complaints against Dr. Lee in this time frame would reasonably encompass this meeting with Dr. Arnold. |
| 51. On August 7, 2015. MATTIODA met with Dr. Arnold. MATTIODA detailed the background and facts regarding his disability, multiple failed reasonable accommodations, and what he considered to be the pervasive atmosphere of illegal harassment he had been undergoing. MATTIODA was surprised when Dr. Arnold responded with, "I have nothing but the highest respect for her [Dr. Dotson]." The manner of Dr. Arnold's comment suggested he already believed Dr. Dotson was not guilty of any type of harassment, discrimination, or retaliation. Dr. Arnold then suggested MATTIODA, Dr. Lee and Dr. Dotson meet together about the issues. MATTIODA said he would normally agree to such a meeting only if one or two events had | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to a similar meeting (*see* ECF 17-2 at PDF p. 120), an investigation of Plaintiff's complaints would reasonably encompass this incident.
. |

United States District Court
Northern District of California

| | |
|---|---|
| occurred and his superiors were completely unaware of what they were doing. Despite the facts, though, MATTIODA agreed to a meeting. | |
| 53. On August 24, 2015. MATTIODA met with Dr. Janice Fried (AMES Anti-harassment coordinator) and provided the information for his harassment and retaliation complaint. Dr. Fried admitted that it was "very difficult" to prove harassment using NASA's policies and procedures. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to Plaintiff filing a harassment complaint with Ms. Fried on this date (*see* ECF 17-2 at PDF p. 51), an investigation of Plaintiff's complaints would reasonably encompass this incident. |
| 74. On or around May 12, 2016, MATTIODA sent Dr. Michael Bicay ("Dr. Bicay"), Science Directorate Chief - MATTIODA's third level supervisor - an email, "I would like to report continuing harassment by my immediate supervisor, Dr. Jessie Dotson." MATTIODA then detailed Dr. Dotson's actions regarding her personally imposed requirements on MATTIODA's reasonable accommodation travel requests. MATTIODA said, "Dr. Dotson has added this additional requirement in retaliation for my previous EEO activities and due to my disabilities." Dr. Bicay responded to the email saying he would speak to Dr. Dotson about the complaint. MATTIODA sent another e-mail confirming he would file another harassment complaint and another EEO complaint regarding these specially imposed requirements on him as a person with disabilities. MATTIODA stated he would also report Dr. Dotson had discussed MATTIODA's medical issues with Dr. Sandford. MATTIODA told Dr. Bicay, "Jessie is doing this purely to embarrass me, harass me, retaliate against me and discriminate against me." | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to Plaintiff's complaints about travel restrictions in this time frame, including emails involving Drs. Bicay and Dotson (*see* ECF 17-2 at PDF pp. 53-54, 129-130), an investigation of Plaintiff's complaints would reasonably encompass this incident. |
| 81. On May 18, 2016, Dr. Bicay responded saying he did not know enough details to either agree or disagree with MATTIODA. But, Dr. Bicay did not offer to investigate MATTIODA's claims. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO to a number of issues with Dr. Bicay in this time frame, an investigation of Plaintiff's complaints would reasonably encompass this incident. |

16

| | |
|---|---|
| 82. On May 19, 2016, MATTIODA confirmed to Dr. Bicay in an e-mail that MATTIODA had fulfilled obligations required under the NASA Anti-Harassment policy to inform a manager about harassment in the work place. He also reminded Dr. Bicay about Dr. Bicay's earlier commitment (made in writing) to provide a "healthy work environment, free of harassment and retribution." | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to Dr. Bicay's "healthy work environment" statement and Plaintiff's complaints about issues with Dr. Bicay in this time frame (*see* ECF 17-2 at PDF pp. 51, 55, 134), an investigation of Plaintiff's complaints would reasonably encompass this incident. |
| 87. On May 23, 2016, MATTIODA met with Dr. Deborah Feng ("Dr. Feng"), Associate Center Director, AMES, to initiate his informal harassment and reprisal complaint. MATTIODA later met with the investigator, Dr. Alfonso Vera, who said he had been conducting investigations for many years and it was "very difficult to prove harassment." "To prove harassment, the manager basically has to say, 'Yes, I was harassing him' in order to get a finding of harassment." | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to harassment complaints regarding Dr. Dotson in this time frame (*see* ECF 17-2 at PDF pp. 29-31), an investigation of Plaintiff's complaints would reasonably encompass this incident. |
| 94. On or around October 4, 2016, the AMES Deputy Center Director (Dr. Thomas Edwards) issued a decision on MATTIODA's harassment complaint about Dr. Dotson's travel requirements. In the memorandum to MATTIODA, Dr. Edwards wrote that Dr. Dotson's actions "adversely affected your work environment by requiring you to disclose your disability to managers who should not need to know about it." Dr. Edwards also stated, "This complaint sheds light on a shortcoming of the Agency's policies and procedures, however. There is no clear approach to handle the financial repercussions of RA findings, and so managers and employees can be left lacking the tools needed to provide accommodations." Dr. Edwards then requested AMES assemble a team to develop recommendations clarifying: (1) the roles, responsibilities, and authorities in making reasonable accommodation travel request determinations, (2) which officials should have access to information, and (3) how to secure funds necessary to fulfill reasonable accommodation determinations. Dr. Edwards set a date of no later than March | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to the memo referenced in this paragraph (*see* ECF 17-2 at PDF p. 127), an investigation of Plaintiff's complaints would reasonably encompass this incident. |

| | |
|---|---|
| 31, 2017 for the team to brief center management on its progress. | |
| 99. On October 4, 2016, Dr. Thomas A. Edwards ("Dr. Edwards"), Deputy Center Director, sent both SSA and MATTIODA a memorandum regarding MATTIODA's internal second discrimination and harassment complaint. Dr. Edwards admitted Dr. Dotson's actions "adversely impacted your work environment by requiring MATTIODA to disclose his disabilities to managers who should not need to know about it." Dr. Edwards also acknowledged MATTIODA's "complaint sheds light on a shortcoming of the Agency's policies and procedures" as there "is no clear approach to handle the financial repercussions of RA findings, and so managers and employees can be left lacking the tools needed to provide accommodations." | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to the memo referenced in this paragraph (*see* ECF 17-2 at PDF p. 127), an investigation of Plaintiff's complaints would reasonably encompass this incident. |
| 106. Around March 20, 2017, MATTIODA discussed his new proposal concept for the Astrophysics Data Analysis program (ADAP) with Dr. Doug Hudgins, Discipline Scientist, to ensure MATTIODA's proposal concept aligned with program requirements. Dr. Hudgins said the proposal concept was aligned with the program requirements, so MATTIODA submitted his new proposal. On or around May 2016, Dr. Hudgins sent an e-mail telling MATTIODA that his proposal was not responsive (aligned) to the program requirements, and Dr. Hudgins had rejected the proposal without submitting it for review. Without copying MATTIODA, Dr. Hudgins sent a separate e-mail to Dr. Dotson and Dr. Lee with the text included, "FYI." Dr. Hudgins was informing these AMES officials that he was acting consistently with what he knew were their efforts to curtail MATTIODA's professional development. | The Court **GRANTS** the motion to dismiss claims based on the incident alleged in this paragraph for failure to exhaust administrative remedies.  The conduct alleged involves a different actor and different issue than Plaintiff's EEO complaints, and there is no reason why an investigation of Plaintiff's EEO complaints would have elicited information about the incident alleged in this paragraph. |
| 116. On April 11, 2017, MATTIODA exchanged emails with Dr. Steve Howell ("Dr. Howell"), requesting a meeting. Dr. Howell responded, "If you are having an issue with Tim [Dr. Lee] and the WP [Lab Astro WP] | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  In light of references in the EEO record to an email to Dr. Howell in this time frame (*see* ECF 17-2 at PDF p. 141), an |

18

| | |
|---|---|
| formulation, I'd suggest you take [sic] to him. Next step is to talk to your branch chief." MATTIODA then provided Dr. Howell a high level overview of the years of discrimination and retaliation involving Dr. Lee. MATTIODA said Dr. Lee's stripping authority for the Lab Astro WP formulation was a continuation of the harassment. When MATTIODA cited examples about Dr. Lee's shunning and excluding MATTIODA from certain critical meetings, Dr. Howell admitted, "Yeah, that was kinda weird." MATTIODA also commented he had heard Dr. Lee made several derogatory comments about MATTIODA that included the false comments that MATTIODA was a "troublemaker," and had been transferred to SST because he could not get along with SSA management. Dr. Howell did not offer to pass this information onward so that NASA could start a discrimination or harassment investigation. | investigation of Plaintiff's complaints would reasonably encompass this incident. |

### c. Claims against Dr. Lee for incidents not identified in EEO charges

Although Dr. Lee was specifically named in Plaintiff's EEO charges, Defendant argues that the FAC includes claims against Dr. Lee that should be barred because they involve new incidents that were not raised in the previous EEO complaints. Dkt. 18 at 14; *see also id.* at 10 (citing ¶¶ 44, 55, 56, 60, 113, 117, 122, 123). The Court rules as follows regarding those paragraphs:

| FAC Paragraph | Court's Ruling |
|---|---|
| 44. On March 19, 2015, MATTIODA saw an ear, nose, and throat ("ENT") doctor who discovered an ear infection and instructed MATTIODA not to fly to the 2015 ACS meeting in Denver set for March 22-26. Previously, MATTIODA had informed Dr. Dotson about his repeated ear infections. MATTIODA then called Dr. Allamandola about the situation because Dr. Allamandola was one of the conference organizers. During their discussion Dr. Allamandola admitted he had had to argue with Dr. Lee to convince him to include MATTIODA at the conference. Dr. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph. Dr. Lee is the focus of Plaintiff's EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. Moreover, the EEO record refers to issues concerning Plaintiff's attendance of the Denver conference and to a conversation with Dr. Allamandola regarding Dr. Lee's lack of respect in a different time frame (*see* ECF 17-2 at PDF pp. 6, 10, 117). |

United States District Court
Northern District of California

| | |
|---|---|
| Allamandola confirmed Dr. Lee had suggested in other meetings that Dr. Lee (a) did not respect MATTIODA's work, (b) thought MATTIODA was lazy, and (c) believed MATTIODA was using his medical and disability issues to avoid work. When MATTIODA later proposed doing a video presentation for the conference, Dr. Lee lied and said the ACS organization did not permit video conferencing. | |
| 55. During the September 13-17, 2015 period, MATTIODA was an invited speaker at a symposium to honor Lou Allamandola's contributions to molecular science. After MATTIODA's presentation, Dr. Annemieke Petrignani and Dr. Alessandra Candian from the Netherlands, approached MATTIODA about possibly collaborating on research involving the overtone and combination bands of PAHs. Neither mentioned ever speaking to Dr. Lee regarding this topic, or any topic. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  This paragraph appears to give context to paragraph 57, which is a further complaint against Dr. Lee, rather than a charge against Drs. Petrignani or Candian. Dr. Lee is the focus of Plaintiff's EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. |
| 56. On October 13, 2015 MATTIODA gave an invitational lecture to the Astrochemistry School held at the SETI Institute in Mountain View. Because of this lecture, Dr. Xinchuan Huang (Dr. Lee's postdoctoral fellow) contacted MATTIODA to discuss the possibility of collaborating with Dr. Petrignani and Dr. Candian. MATTIODA responded saying he had already discussed this possibility with the two researchers in September. MATTIODA then learned Dr. Lee had falsely claimed that he, Dr. Lee, was the one who spoke with the two researchers regarding a collaboration with MATTIODA. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph, for the reasons discussed in connection with paragraph 55. |
| 60. On February 4, 2016, Dr. Boersma and MATTIODA met with Dr. Lee and his postdoctoral fellow, Dr. Huang. Based on previous exchanges with Dr. Huang, MATTIODA had initiated the meeting to discuss potentially collaborating on a project. Dr. Boersma and MATTIODA presented their concept to Dr. Huang and Dr. Lee. After the presentation, Dr. Lee made it clear Dr. Lee | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Dr. Lee is the focus of Plaintiff's EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. |

| | |
|---|---|
| was not interested in collaborating with MATTIODA and Dr. Boersma on that project. Dr. Lee stated that Dr. Boersma and MATTIODA were free to collaborate with other people. | |
| 113. Sometime around Spring 2017, Dr. Tim Lee ("Dr. Lee") stepped down from the SS Division Branch Chief position. MATTIODA had filed prior EEO Complaints against NASA and named Dr. Lee in his complaints. NASA was well aware of MATTIODA's disability status before 2017. Despite MATTIODA's prior EEO and harassment complaints against Dr. Lee, when Dr. Lee stepped down from his Branch Chief position, NASA assigned Dr. Lee to work in the Planetary Sciences Branch, alongside MATTIODA. Dr. Lee then used about $3,000 of Division funds to redecorate his new office, next to MATTIODA, despite having previously told MATTIODA the Agency lacked funds to pay for MATTIODA's reasonable accommodation requests. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Dr. Lee is the focus of Plaintiff's EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. |
| 117. On May 10, 2017, Mr. Mark Fonda ("Dr. Fonda") asked Dr. Lee's opinion about involving MATTIODA in a Lab Astro Tour. Dr. Lee responded, "Not Andy." Other than a retaliatory motive, Dr. Lee had no other reason to deny this tour opportunity to MATTIODA. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Dr. Lee is the focus of Plaintiff's EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. |
| 122. On July 10, 2017, Dr. Lee told Dr. Steve Zornetzer about MATTIODA's EEO and harassment complaints. As of June 2017, NASA had assigned Dr. Lee to be on the selection panel ("ST Panel") to select the person filling the Sr. Technical Scientist position. NASA allowed Dr. Lee onto this panel, which had accepted MATTIODA's application, despite the fact that Dr. Lee was the person against whom MATTIODA had filed prior EEO complaints. | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Dr. Lee is the focus of Plaintiff's EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. |
| 123. In that July 10, 2017 meeting, Dr. Lee spoke with the other hiring panel members about MATTIODA. For whatever reason, and | The Court **DENIES** the motion to dismiss claims based on the incident alleged in this paragraph.  Dr. Lee is the focus of Plaintiff's |

| | |
|---|---|
| in violation of both procedures and custom, all the members of the ST Panel either destroyed, or removed, their notes taken from that meeting, thus creating a spoliation of the evidence. About one month after making these comments about MATTIODA and other potential candidates to the hiring panel, Dr. Lee recused himself from serving on the ST Panel. Dr. Jaya Bajpayee ("Dr. Bajpayee") replaced him. MATTIODA believes based on the other circumstances surrounding the selection process, that Dr. Lee communicated with others during this one month period of activity. | EEO complaints, and an investigation of Plaintiff's complaints would reasonably encompass this and other alleged incidents involving Dr. Lee. |

### d.      Conclusion re Exhaustion of Administrative Remedies

For the reasons discussed above, Defendant's motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(1) on the basis of lack of subject matter jurisdiction is **DENIED**.  Defendant's motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) on the grounds of failure to exhaust administrative remedies is **GRANTED IN PART and DENIED IN PART** as indicated in the charts above.  Where the motion to dismiss has been granted on the grounds of failure to exhaust administrative remedies, no leave to amend is granted.  Although leave to amend should be freely given, it should be denied where amendment would be futile.  *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).  Plaintiff cannot correct his failure to exhaust administrative remedies by filing an amended complaint.

### C.      Failure to State a Claim

Defendant argues that even if Plaintiff exhausted his administrative remedies, the FAC should nevertheless be dismissed because each claim in the FAC fails to state a cause of action. Dkt. 18 at 17-24.

#### 1.      Claims for disability discrimination

Defendant argues that Plaintiff's discrimination claims should be dismissed because: (1) they include allegations about discrete events that occurred prior to July 7, 2015 and for which Plaintiff did not file an EEO claim; and (2) as to the timely discrimination claims, Plaintiff failed to  plead facts giving rise to a plausible claim for discrimination.  Dkt. 18 at 17-18.

### a.   Timeliness

As discussed above, to bring a claim under the Rehabilitation Act, a federal employee must first contact an EEO counselor within forty-five days of the alleged discrimination.  29 C.F.R. § 1614.105(a)(1).  "The limitations-period analysis is always conducted claim by claim" and "begins running on any separate underlying claim of discrimination when that claim accrues." *Green v. Brennan,* 136 S. Ct. 1769, 1782 (2016); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-115 (2002).  "This requirement is not jurisdictional, but a federal employee who fails to contact an EEO counselor for pre-complaint processing risks dismissal of any subsequent complaint."  *Williams,* 2019 WL 6311381, at *8 (citations omitted).

The parties agree that Plaintiff first contacted an EEO counselor on August 21, 2015.  Dkt. 18 at 3; Dkt. 21 at 7.  According to Defendant, this means that Plaintiff cannot base his discrimination claim on any conduct that occurred more than 45 days before August 21, 2015, *i.e.,* before July 7, 2015.  Dkt. 18 at 17.  Both Plaintiff's first EEO complaint and the FAC in this case describe conduct dating back to 2011.  *See, e.g.,* Scharf Decl. ¶ 2 and Ex. A; FAC ¶¶ 10-47.  Plaintiff characterizes these allegations of the first EEO complaint as "continuous violations spanning many years."  Dkt. 21 at 7.  Plaintiff argues that the existence of past acts and his knowledge of those acts does not bar him from filing charges about related discrete acts, "so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."  *Id.*  He also argues that he is not barred from using "prior acts as background evidence to support a timely claim."  *Id.* (citing *Morgan*, 536 U.S. at 102).

*Morgan* concerned the timely filing requirements of Title VII, which require that a charge be filed within 180 days "after the alleged unlawful employment practice occurred."  *Morgan*, 536 U.S. at 109.  The Supreme Court stated that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  *Id.* at 110.  The court rejected an argument that "the term 'practice' converted related discrete acts into a single unlawful practice for purposes of timely filing."  *Id.*  Accordingly, the court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Morgan,* 536

U.S. at 113.  However, the Court noted the following limitations on this principle:

> The existence of past acts and the employee's prior knowledge of their occurrence … does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.[2]

Applying *Morgan*'s holdings in another Title VII case, the Ninth Circuit concluded that "[a] discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period."  *Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002).  Subsequently, the Ninth Circuit has held that *Morgan* "applies with equal force to the Rehabilitation Act."  *Ervine v. Desert View Regional Med. Ctr. Holdings, LLC*, 753 F.3d 862, 869 (9th Cir. 2014) (citation omitted).

Although Plaintiff's opposition to the motion to dismiss refers to the allegations of the first EEO complaint as "continuous violations" (Dkt. 21 at 7), the Supreme Court's decision in *Morgan* substantially limited the notion of continuing violations to situations involving a pattern or practice that is pervasive throughout the workplace.  *Williams*, 2019 WL 6311381, at *9-10 (citations omitted).  There is no allegation that such a situation existed in this case.

Accordingly, to the extent the FAC could be construed as bringing discrimination claims based on discrete adverse actions occurring before July 7, 2015, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND**.  Plaintiff may not present evidence of those events as a continuing violation based on a theory of discrimination, although in some circumstances evidence of past conduct that was not timely presented to the EEO may be presented "as background evidence in support of a timely claim."  *See Morgan,* 536 U.S. at 113; *see also Williams*, 2019 WL 6311381, at *10.  To the extent such evidence may be permissible,

---

[2] In *Morgan*, the Supreme Court also noted that the time period under Title VII for filing a charge "is subject to equitable doctrines such as tolling and estoppel," although these doctrines "are to be applied sparingly."  *Morgan*, 536 U.S. at 113.  In this case, Plaintiff does not argue that these equitable doctrines apply, and therefore the Court does not discuss them further.

United States District Court
Northern District of California

objections to that evidence arising under the Federal Rules of Evidence, as well as rulings on those objections, are reserved for discovery and trial.

### b.    Elements of claim for disability discrimination

Defendant argues that as to any timely claims for discrimination, the FAC fails to state a claim "because [such claims] have no factual support."  Dkt. 18 at 18.  To state a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must demonstrate that (1) he is a person with a disability, (2) who is otherwise qualified for employment, meaning that he can perform the essential duties of this position with or without reasonable accommodation, and (3) suffered discrimination because of his disability.  *Silveria v. Wilkie*, No. 18-cv-07327-EMC, 2020 WL 820377, at *7 (N.D. Cal. Feb. 19, 2020) (citing *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007)).  "[A] plaintiff is not required to plead a prima facie case of discrimination or retaliation in order to survive a motion to dismiss," but "courts still look to the elements of the prima facie case "to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300–01 (N.D. Cal. 2020) (citations omitted).

Defendant argues that Plaintiff's claim for disability discrimination should be dismissed because he fails to allege that he suffered discrimination because of his disability.  Dkt. 18 at 18.  According to Defendant, the only facts Plaintiff pleads that show a connection to his disability concern Dr. Dotson's request that Plaintiff provide concurrence from the manager of travel funds for Plaintiff's travel requests, and Dr. Lee's request that Plaintiff include reasonable accommodation funding in his travel fund request.  *Id*. (citing FAC ¶¶ 65, 68, 69, 70, 72, 73, 75–80, 104-105).  Defendant argues that these actions do not constitute discrimination but instead "demonstrate management's attempts to work with Plaintiff to ensure that the agency fulfilled his reasonable accommodation requests."  *Id*.  Plaintiff's opposition to the motion to dismiss focuses on Defendant's administrative exhaustion argument and does not address Defendant's argument that the acts alleged in the FAC do not constitute discrimination.  *See* Dkt. 21.

Defendant's argument essentially offers an alternative, non-discriminatory interpretation of

the conduct attributed to Drs. Dotson and Lee.  However, Defendant has not identified a missing element of Plaintiff's claim for discrimination.  Plaintiff has met the standard of pleading a plausible claim for discrimination, and accordingly Defendant's motion to dismiss Plaintiff's claims for disability discrimination is **DENIED.**

### 2.     Claims for harassment based on disability

Defendant argues that Plaintiff's claims for harassment based on disability should be dismissed because if such a cause of action exists:  (1) Plaintiff's harassment claims include allegations about events that occurred prior to July 7, 2015 and for which Plaintiff did not file an EEO claim; and (2) as to the timely discrimination claims, Plaintiff failed to  plead facts giving rise to a plausible claim for harassment.  Dkt. 18 at 18-21.

### a.     Timeliness

As discussed above, in *Morgan* the Supreme Court held that claims of discrete discriminatory acts must be filed within the appropriate time period.  *Morgan,* 536 U.S. at 113. However, *Morgan* also noted that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct."  *Id*. at 115.  Accordingly, "a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Id.* at 122; *see also Lyons v. England*, 307 F.3d 1092, 1106-1107 (9th Cir. 2002).

Here, the FAC includes alleged incidents of harassment that occurred after July 7, 2015, which as discussed above is the cut-off date for actions to be included in Plaintiff's first EEO complaint.  *See, e.g.,* FAC ¶¶ 48-57, 65, 70, 72-74, 80, 103, 105, 107.  Taking Plaintiff's allegations are true and drawing all inferences in Plaintiff's favor, as the Court must do on a motion to dismiss, the Court finds that the FAC adequately alleges that the harassment that predated July 7, 2015 was part of the same unlawful employment practice as the harassment that occurred after that date.  The Court therefore **DENIES** the motion to dismiss Plaintiff's harassment claims as untimely; however, as discussed in the following section, the Court will dismiss Plaintiff's harassment claims because they fail to plausibly allege all required elements of such a claim.

United States District Court
Northern District of California

### b.        Elements of a harassment claim

As an initial matter, Defendant argues that "the Ninth Circuit has not determined whether the ADA or Rehabilitation Act gives rise to a claim of harassment." Dkt. 18 at 19 (citations omitted).  The parties have not fully briefed this issue.  Accordingly, adopting the approach taken by another court in this District, on the present motion to dismiss this Court will "[a]ssume[] without deciding that such a claim exists and that the Ninth Circuit would adopt a test for disability based harassment claim that is similar to the one articulated by the Fifth Circuit." *See Anello v. Berryhill,* No. 18-cv-00070-DMR, 2019 WL 285197, at *11 (N.D. Cal. Jan. 22, 2019). The Fifth Circuit states that in order to prove a claim of disability-based harassment, the plaintiff must prove:  (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Id.* at *11 (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001)).  "Moreover, the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236 (quotation marks omitted).

The harassment cause of action in the FAC includes an assertion that Defendant engaged in harassment by "failing to treat plaintiff in the same manner as non-disabled employees, continuously and pervasively harassing MATTIODA over many years (including with respect to evaluations and promotions), and directing adverse treatment against him because of his disability conditions." FAC ¶ 142.  The Court is not required to accept conclusory allegations as true. *See Iqbal*, 556 U.S. at 678-79.  Moreover, Plaintiff must do more than "simply recite the elements of a cause of action." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The FAC alleges a series of remarks by Drs. Lee and Dotson that Plaintiff alleges were harassing. *See, e.g., id.* ¶¶ 11, 19, 26, 30, 48.  Many, if not all, of these alleged remarks have no readily apparent link to Plaintiff's disability.  For example, Plaintiff cites as an "example[] of harassment" a conversation in which Dr. Lee allegedly said he did not respect Plaintiff's work and

United States District Court
Northern District of California

that Dr. Allamondola "is doing all the work for you." FAC ¶¶ 18-20. Another "harassing comment[]" identified by Plaintiff concerns Dr. Lee's statement that Plaintiff should seek labor funding from NASA Headquarters since Plaintiff chose to step down from the Deputy Branch Chief position. *Id.* ¶ 30. Plaintiff also claims that Dr. Dotson's request that Plaintiff sign a letter rejecting his reconsideration request concerning his performance rating was "harassing because the agency's regulations required Dr. Dotson, not MATTIODA, to sign that form." *Id.* ¶ 48. In his opposition to the motion to dismiss, Plaintiff does not address the elements of a disability claim or identify where he pleaded facts connecting the allegedly harassing actions and his disability.

Even if Plaintiff had pleaded facts showing a link between the conduct attributed to others and Plaintiff's disability, Plaintiff fails to plead facts establishing a plausible claim that this conduct rose to the level of severe and pervasive conduct. To be actionable harassment, the alleged conduct must be "sufficiently pervasive or severe to alter the conditions of employment and create an abusive working relationship." *See Flowers*, 247 F.3d at 236. To meet that threshold, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Anello*, 2019 WL 285197, at *11 (quoting *Fowler v. Potter*, No. C 06-04716-SBA, 2008 WL 2383073, at *9 (N.D. Cal. June 9, 2008) and *Morgan*, 536 U.S. 101 at 116)). Courts must "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Anello*, 2019 WL 285197, at *11 (quoting *Farragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). Again, Plaintiff's opposition to the motion to dismiss does not address or establish whether the FAC plausibly alleges severe and pervasive conduct.

The Court concludes that the FAC fails to adequately allege harassing conduct that is linked to his disability and that is sufficiently pervasive or severe to alter the conditions of employment and create an abusive working relationship. Accordingly, the Court **GRANTS WITH LEAVE TO AMEND** the motion to dismiss the harassment claims.

### 3.      Claims for reasonable accommodation

Defendant argues that Plaintiff's claims for failure to provide reasonable accommodation based on disability should be dismissed because:  (1) Plaintiff's claims for failure to provide reasonable accommodation include allegations about events that occurred prior to July 7, 2015 and for which Plaintiff did not file an EEO claim; and (2) as to the timely claims, Plaintiff failed to plead facts giving rise to a plausible claim for failure to provide reasonable accommodation.  Dkt. 18 at 21-22.

#### a.      Timeliness

A claim for failure to provide reasonable accommodation may include only those discriminatory acts that occurred within 45 days prior to the Plaintiff's EEO report.  *See Yonemoto v. Shulkin*, 725 Fed. Appx. 482, 485 (9th Cir. 2018).  Several of Plaintiff's claims for reasonable accommodation are based on incidents that occurred more than 45 days before August 21, 2015, *i.e.,* before July 7, 2015.  *See, e.g.,* FAC ¶¶ 10, 12, 21, 22-28, 40-41.  Accordingly, to the extent the FAC could be construed as bringing claims based on alleged failure to provide reasonable accommodation occurring before July 7, 2015, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND**.

#### b.      Elements of a claim for failure to provide reasonable accommodation

To state a *prima facie* case for failure to accommodate a disability, a plaintiff must show that (1) he is disabled, (2) he is a qualified individual who can perform the essential functions of the job position with or without reasonable accommodation, and (3) that a reasonable accommodation is possible.  *Estell v. McHugh*, No. 15-cv-04787-MEJ, 2020 WL 4140819, at *5 (N.D. Cal. Aug. 4, 2016) (citations omitted).  A "reasonable accommodation" is defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position[.]"  *Silveria*, 2020 WL 820377, at *8 (citing 29 C.F.R. § 1630.2(o)(ii)).

Plaintiff's timely claims for failure to accommodate appear to relate to Plaintiff's request for upgraded travel.  *See* FAC ¶¶ 68, 72.  Plaintiff concedes in the FAC that at least one of these

United States District Court
Northern District of California

travel accommodation requests was granted.  *Id.* ¶ 69-70, 72-77.  Plaintiff's complaint appears to be that he was required to provide additional approvals regarding the funds to be used for upgraded travel.  *Id.*  However, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation."  *Zikovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).  Moreover, "[w]hen accommodation is required to enable the employee to perform the essential functions of the job, the employer has a duty to gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are *necessary* to enable the applicant to perform the job."  *Buckingham v. U.S.*, 998 F.2d 735, 740 (9th Cir. 1993) (internal quotation marks and citation omitted) (emphasis in original).  "An accommodation is not reasonable if it results in undue hardship – that is, when it causes 'more than a de minimis cost to the employer'" or other impacts.  *Hayes v. Potter*, No. C-02-0437 VRW, 2006 WL 8448504, at *5 (N.D. Cal. 2006) (quoting *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999)).

Here, Plaintiff's claims for failure to provide reasonable accommodation rely on allegations that Plaintiff was required to provide additional documentation about available funding for his requested travel upgrades.  Because cost is a relevant consideration for the agency in determining whether a proposed accommodation is reasonable and not an undue hardship, under the facts of this case, the allegations of the FAC are insufficient to support a claim for failure to provide reasonable accommodation.  Accordingly, the Court **GRANTS WITH LEAVE TO AMEND** the motion to dismiss the claims for failure to provide reasonable accommodation.

### 4.    Claims for reprisal

Defendant argues that Plaintiff's claims for reprisal should be dismissed because:
(1) Plaintiff's claims for failure to provide reprisal include allegations about events that occurred prior to July 7, 2015 and for which Plaintiff did not file an EEO claim; and (2) as to the timely claims, Plaintiff failed to  plead facts giving rise to a plausible claim for reprisal.  Dkt. 18 at 22-24.

### a.    Timeliness

Under *Morgan*, claims for reprisal are not subject to the continuing violations doctrine, and instead each retaliatory adverse employment decision concerns a separate actionable unlawful

United States District Court
Northern District of California

1    employment practice that must be the subject of a timely complaint. *Morgan*, 536 U.S. at 114.

2    Accordingly, to the extent the FAC could be construed as bringing claims based on alleged acts of

3    reprisal occurring before July 7, 2015, the motion to dismiss is **GRANTED WITHOUT LEAVE**

4    **TO AMEND**.

5                          **b.       Elements of a claim for reprisal**

6               To state a claim for retaliation, a plaintiff must allege: (1) that he engaged in a protected

7    activity; (2) that he was subsequently subjected to an adverse employment action; and (3) that a

8    causal link exists between the two. *Silveria*, 2020 WL 820377, at *9 (citing *Manatt v. Bank of*

9    *America*, 339 F.3d 792, 800 (9th Cir. 2003)).

10              With respect to Plaintiff's timely claims for reprisal, he identifies several alleged incidents

11   that he contends were retaliation for his prior EEO complaints, such as the following:  (1) Dr.

12   Dotson's imposition of additional requirements for Plaintiff's travel requests in May 2016 (FAC

13   ¶ 74); (2) Dr. Lee's exclusion of Plaintiff from a meeting with Dr. Boersma in February 2017 (*id.*

14   ¶ 103); (3) Dr. Grossman's "partial response" to Plaintiff's request for funding in December 2017

15   (*id.* ¶ 109); (4) Dr. Lee's direction to exclude Plaintiff from a Lab Astro Tour in May 2017 (*id.*

16   ¶ 117); (5) Plaintiff's exclusion from decisions regarding hiring and postdoctoral candidate

17   selection in June and August 2018 (*id.* ¶ 135, 138); and (6) Dr. Howell's designation in July 2018

18   of someone other than Plaintiff as the point of contact for a work package on which Plaintiff was a

19   senior member (*id.* ¶ 136).

20              Other than labeling these incidents as retaliatory, Plaintiff does not plead any facts

21   connecting these incidents to his prior protected EEO activity.  Accordingly, the Court **GRANTS**

22   **WITH LEAVE TO AMEND** the motion to dismiss the claims for reprisal.

23           **C.       Failure to Satisfy Rule 8(a)**

24              Defendant also argues that the FAC fails to satisfy the "short and plain statement"

25   requirement of Rule 8(a)(2).  Dkt. 18 at 15.  Given the history of this case, which involved

26   consolidation of four separate lawsuits and an order that Plaintiff file a consolidated complaint, the

27   Court concludes that the FAC, which consists largely of a chronological recitation of Plaintiff's

28   factual allegations, complies with the requirements of Rule 8(a).  However, in a Second Amended

United States District Court
Northern District of California

Complaint ("SAC"), Plaintiff must consolidate each cause of action and identify supporting paragraphs.  For example, whereas the FAC contains four causes of action for reprisal (Counts Three, Six, Nine, and Eleven), the SAC should contain a single cause of action for reprisal that refers to the specific supporting paragraphs.  The SAC must similarly consolidate the FAC's multiple causes of action for disability discrimination, harassment, failure to engage in the interactive process, and failure to provide reasonable accommodation into one count for each type of claim, and it must refer to the specific supporting paragraphs for each of those counts.

## IV.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.  Defendants' motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is **DENIED.**

2.  Defendants' motion to dismiss the FAC under Rule 12(b)(6) is **DENIED IN PART and GRANTED IN PART.**

3.  If Plaintiff wishes to attempt to address the deficiencies identified in this order for which he has been granted leave to amend, and if he can do so in compliance with Rule 11 standards, he may file a Second Amended Complaint ("SAC") within **21 days of the date of this order**.  The SAC must consolidate Plaintiff's duplicative causes of action and provide references to specific supporting paragraphs, as explained in Section III.C. above.  The Plaintiff must file as an exhibit to the SAC a redline comparing the FAC and SAC.

4.  Following the filing of a SAC, Defendant must file a response within **21 days**.

5.  If Defendant responds by filing a motion to dismiss the SAC, Plaintiff must file an opposition to that motion within **14 days**.  Defendant may file a reply within **7 days** of the filing of Plaintiff's opposition.  The Court will advise the parties if a hearing is necessary.

////

////

////

6.  If Defendant responds by filing an answer to the SAC, he must on the same date file a Notice of Need for Case Management Conference.

**SO ORDERED.**

Dated: January 8, 2021

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California